UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15-cr-00041-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **SAMUEL HENRY VINCI, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 45). The Government has responded in opposition to the motion. (Doc. No. 47).

## I. BACKGROUND

Before Defendant committed the federal enticement crime that gave rise to the sentence from which he now seeks relief, he had already received multiple convictions in state court for serious offenses, mostly including alcohol and/or minors. *Presence Report* (Doc. No. 20, ("PSR") at 6–8. Among his convictions was a state conviction for Contributing to the Delinquency of Minor in 1997. Id. at 20. He was placed on unsupervised probation. His probation was revoked only a few months later. In those few months, Defendant was arrested for Driving While Impaired and Carrying a Concealed Weapon, and then again for Contributing to the Delinquency of a Minor and Violation of a Court Order. He pled to the Driving While Impaired charge and Violation of a Court Order. He received an active sentence for violating the court order and was placed on unsupervised probation for the Driving While Impaired conviction. Id.

Once again, while on probation, Defendant was arrested. This time he was arrested for

1

raping two minors. Id. at 7-8. According to the PSR, on or about June 8, 1998, Defendant carnally knew and abused a minor, who at the time was mentally incapacitated. Id. In doing so, the court found that he had taken advantage of a position of trust and confidence to commit the offense, and that he had supplied the victim with alcohol which rendered her helpless. Id. Defendant also pled guilty to raping another minor on or about June 9, 1998, who was also mentally incapacitated. Defendant was sentenced to 125-159 months imprisonment. He was released on supervision in February 2009. However, his supervision was revoked in November 2010 and he returned to prison for an additional nine months. Id.

After he became a convicted rapist, Defendant was required to register as a sex offender. As a registered sex offender, Defendant was required to inform local law enforcement about any email address or online identifiers that he had. Law enforcement learned that Defendant was operating a Facebook account under a false name that he had sent up with an unregistered email address. During the investigation, Defendant accepted a friend request from someone he believed to be a 15-year-old girl named "Sierra."[1] Shortly after learning her age, Defendant began chatting in a sexual manner with Sierra. Within a few hours, he asked Sierra to make him a video of her "being sexy" and requested that she produce a produce a pornographic image of herself for him.

Defendant continued to reach out to Sierra. He proposed that they meet and repeatedly stated that he wanted to engage in various sex acts with her, describing them in explicit terms. Defendant then drove to the predetermined meeting place to meet and sexually abuse Sierra, but instead he was arrested. He admitted that he had gone there to meet with someone he believed to be a minor.

Defendant, in a plea agreement, pled guilty to attempted enticement of a minor. (Doc. No. 14). The Court sentenced Defendant to 235 months imprisonment and lifetime supervised

---

[1] "Sierra" was actually an undercover law enforcement officer.

release. (Doc. No. 25).

Defendant is currently serving his sentence at FCI Williamsburg Medium. He has served approximately 73 months, or 31% of his total sentence. With good conduct, his projected release date is May 21, 2031. During his time in FCI Williamsburg Medium, he has not had any disciplinary issues. Prior to being in custody, Defendant had several medical conditions, as documented in his PSR. While serving his sentence, his medical conditions have been treated, including any new ones that have developed. Notably, Defendant does have Chronic Obstructive Pulmonary Disease (COPD). His records did not indicate a diagnosis of hypertension or coronary artery disease. Regardless, his current medical situation is well controlled and there is no indication that Defendant is unable to provide self- care in the facility. Currently, 5 inmates and 8 staff members at FCI Williamsburg have tested positive for COVID-19. Four inmates have recovered for COVID-19 and there have been no deaths as a result of COVID-19.

On June 2, 2020, Defendant filed a request with the warden to be considered for compassionate release. His request was based on the COVID-19 pandemic and the potential risks he faced as a person with his medical conditions. On June 22, 2020, the Warden denied his request.

On October 6, 2020, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the ground that his medical conditions and age put him at risk of developing severe or deadly symptoms from COVID-19, and that is he is more likely to contract COVID-19 in prison. (Doc. No. 45).

## II. DISCUSSION

### A. Sentence Reduction

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. A court may reduce the

3

Case 5:15-cr-00041-MOC-DCK   Document 50   Filed 11/02/20   Page 3 of 9

defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care

---

[2] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21.

within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D). Here, Defendant's request for a sentence reduction is denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Defendant would pose a danger to public safety if released. Defendant's history of violence and his offense conduct demonstrate that Defendant remains "a danger to the safety of any other person" and "to the community." Id. This defendant raped two different minors on two different days. The minors were mentally incapacitated. The court found that he abused his position of trust when he committed the crime. Then, within a few years of his release, Defendant opened a social media account, under a false name and used an email address he had not reported as required by law. Through this account, he attempted to commit a crime very similar to the one for which he had served over a decade in prison – raping a teenage girl. He tried to be smarter this time, which would allow to him avoid apprehension. Rather than harm those close to him, he moved online to reach new victims. He provided a fake name to his victim and attempted to verify her identity. Notably, he committed this crime while being a registered sex offender. Neither a lengthy sentence

nor the sex offender registry deterred him from attempting to commit a sexual crime against a minor. Lifetime supervision does not offer protection either. This defendant has committed crimes while on state probation, been convicted of violating court orders and has had his post-release supervision revoked in his past. Furthermore, under his release plan, he would just be returning to the very place where he committed his crime. The community will only be protected by ensuring that Defendant remains in prison.

Furthermore, with regard to dangerousness, § 1B1.13(3) directs the court to consider the various Bail Reform Act factors that are enumerated in 18 U.S.C. § 3142(g), including whether the offense is a crime of violence and involves a minor victim. His offense of conviction is a crime of violence per 18 U.S.C. § 3156. Defendant was fully prepared to sexually abuse a minor for his own gratification. Fortunately, Defendant was arrested as part of a law enforcement undercover operation so there was no real child.

Also relevant to the issue of dangerousness is that, while Defendant has been incarcerated, there is no evidence that he has been enrolled in or requested sex offender treatment. Defendant's age and medical condition do not mitigate his dangerousness either. Defendant was 54 years old when he attempted to groom a child in this case. He had several medical conditions at the time he committed the crime and none of his current conditions would prevent him from finding and attempting to meet a child for sexual activity. Defendant has not shown this Court that he is not a danger. See e.g., United States v. Sears, No. 19-CR-21 (KBJ), 2020 WL 3250717 (D.D.C. June 16, 2020) (Although Defendant, who suffered from diabetes, hypertension, asthma, and depression, presented extraordinary and compelling reasons for his release, the court denied the motion because he has only served 23 months of 71-month sentence for distributing child pornography).

In addition, the § 3553(a) factors strongly disfavor a sentence reduction. The sentencing

factors direct the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, protect the public from future crimes of the defendant, and provide just punishment. Further, the Court is directed to consider the history and characteristics of defendant and the need for the sentence … to afford adequate deterrence to criminal conduct. All of these factors weigh against any reduction in Defendant's sentence.

Defendant's crime was heinous. He actively pursued a sexual encounter with a 15-year-old child. Although he was not successful, his intent was clearly to do harm to a child. Not only was this a very serious crime, but it shows that protection of the public is of utmost importance in his case.

Furthermore, this Court carefully considered Defendant's history and characteristics when it imposed a sentence in 2016. Defendant brought his health conditions and age to this Court's attention at that time. Defendant's Sentencing Memorandum, (Doc. No. 22, 2-3); PSR, (Doc. No. 20, 10). His PSR noted that Defendant was diagnosed with COPD and has had back surgeries due to ruptured discs and needed further care. He also reported that he was being monitored for possible diabetes. (Doc. No. 20, 10). The Court weighed all this medical information and still found 235 months to be a just sentence in this case.

Moreover, Defendant has only served 73 months, which is less than the mandatory minimum sentence for his charge and only a third of the imposed sentence. Reducing his sentence to time-served would not recognize the seriousness of the offense nor be a just punishment for a person that was stopped from raping a 15-year-old child. Nor would it provide deterrence. Defendant previously served more than a decade in prison and was not deterred from trying to have sex with a minor again. Rather than being a deterrent, Defendant's prior conviction only taught him to be more careful about getting caught. Defendant was also able to circumvent the protection offered by the sex offender registry. It is necessary to protect the public because it is

7

Case 5:15-cr-00041-MOC-DCK    Document 50    Filed 11/02/20    Page 7 of 9

clear that neither prison time nor the sex offender registry will deter Defendant. A lengthy sentence is the only means to ensure the safety of the public.

Finally, the Court notes that the Bureau of Prisons continues to undertake extensive and professional efforts to curtail the virus's spread. At present, Defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19.

### B. Home Confinement

Defendant has also asked in the alternative that this Court order BOP to place him in home confinement. Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam). A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151-52 (5th Cir. 1993). Because Defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. See Sandin v. Conner, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."). Following the imposition of a sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. United States v. Garcia, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. See § 3582(c). But Defendant's request to serve the rest of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. Defendant's

request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because Defendant offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request for such relief in this forum.[3]

**ORDER**

In light of Defendant's record and the totality of relevant circumstances, this Court denies the motion for a sentence reduction. **IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 45), is **DENIED.**

Signed: November 2, 2020

Max O. Cogburn Jr.
United States District Judge

---

[3] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; see 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. See § 3583(e)(2).